## THE STATE v. CHARLES HART, Appellant.

### Division Two, June 5, 1925.

1. **INSTRUCTION: Confusing: Abstract Law.** In a prosecution for murder an instruction telling the jury that "before you can find the defendant guilty of any crime you must find from the evidence that the defendant shot and killed" deceased is neither misleading or confusing, nor an abstract proposition of law, but clearly states one specific fact which must be found before a verdict of guilty can be returned.

2. **MANSLAUGHTER: Definition.** An instruction declaring that "manslaughter, for the purposes of this trial, is the wilful killing of a human being without deliberation and without malice afore-thought," is unobjectionable in a trial in which there is no claim or evidence of self-defense.

3. **————: Heat of Passion.** Since the amendment of the statute in 1919 by abolishing the degrees of manslaughter, and defining manslaughter as every killing of a human being by the act, pro-curement or culpable negligence of another, not declared to be murder or excusable or justifiable homicide, it is not necessary that the instruction define "heat of passion."

4. **INSTRUCTION: Intending Death: Use of Deadly Weapon: Presump-tion.** The intent with which a homicide is committed cannot be proved by direct evidence. The jury, and the witnesses who ob-serve the criminal act, can only judge what is in the mind of the perpetrator by the act itself. The intent necessarily prompts the conscious act and must be presumed. Every one is presumed to in-tend the natural and probable consequences of his own intentional act. Hence, an instruction telling the jury that "he who wilfully, that is intentionally, uses upon another at some vital part a deadly weapon, such as a pistol loaded with gunpowder, lead and

ball, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this must be presumed to intend death, which is the probable consequence of such act, and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly and with a bad heart," announces no rule of presumption that is out of harmony with the law of evidence; it is not erroneous on the alleged theory that intent is a question of fact to be proved as other facts.

5. **VARIANCE: In Allegation and Proof: Name of Deceased: Materiality.** Where the information charged the defendant with the murder of John Less, and the evidence showed that the name of deceased was John Lesneski, although he was generally known and called by the name of John Less, the trial court in overruling a demurrer to the evidence, presented on the ground of variance between the allegation and proof, thereby found the variance was not material; and under the statute (Sec. 3907, R. S. 1919) a variance between the allegation and proof, in the Christian or surname, or both, of any person in the information named or described, is not a ground of acquittal unless the trial court deem the variance material.

6. ———: ———: ———: **Materiality Matter for Court.** Whether the variance between the allegation and proof, in the name of deceased, is material, is a matter for the court to decide, and there is no authority in the statute (Sec. 3907, R. S. 1919) for the submission of such issue to the jury.

7. ———: ———: ———: **Immaterial.** Where defendant killed a policeman named John Lesneski and in the information was charged with killing John Less—the name by which the murdered man was commonly known—the use of the name "John Less" to describe the deceased did "not tend to the prejudice of the substantial rights of the defendant upon the merits," and therefore the variance between the allegation and proof was immaterial, and under the statute (Sec. 3908, R. S. 1919) the judgment or other proceeding cannot be stayed or arrested or in any manner affected because of such defect in the information.

8. **RES GESTAE: Statement of Deceased: Immediately After Receiving Mortal Wound.** A spontaneous statement by a person mortally wounded, made immediately after receiving his death blow, is admissible as *res gestae*. Defendant was arrested about midnight at a hotel by deceased and other policemen, but as he was being placed in a patrol wagon he started to run, and deceased and other officers gave chase. He had run a short distance when overtaken by deceased, who was on the point of seizing him when he pulled a revolver out of his shirt front and fired at deceased, who stumbled

to the ground, mortally wounded. An officer who was a block away from where deceased fell, heard the shot and ran to the place, and was permitted to testify that when he arrived at the place the wounded officer said: "Send me to the Sisters' Hospital; call my wife: Charlie Hart shot me. Get him, boys." *Held*, that, under the circumstances, the testimony was admissible as part of the *res gestae*. The statement arose naturally out of the circumstances which caused it, and was undesigned and spontaneous.

9. **EVIDENCE: Another Revolver: Resistance of Arrest: Exhibit to Jury.** Where deceased was shot by defendant with a 45-calibre bullet, evidence that, when defendant was arrested at a farm three days later, he was in bed, a revolver in his hand under the bed cover, which was a 38-calibre Army pistol, rusty, fully loaded and had not lately been fired, did not harm defendant, so far as it had any tendency to show that he used the 38-calibre revolver in shooting deceased, and was admissible for the purpose of showing that he contemplated resisting arrest and that he was armed when arrested; nor was it prejudicial to exhibit the revolver itself to the jury, since it was not of a character to excite prejudice or passion.

Corpus Juris-Cyc. References. Criminal Law, 16 C. J., Sections 49, p. 81, n. 63; 1114, pp. 573, n. 36, 574, n. 45, 52; 1119, p. 577, n. 85; 1225, p. 619, n. 46 New; 2477, p. 1036, n. 65; 2482, p. 1041, n. 14. Homicide, 30 C. J., Sections, 335, p. 132, n. 19, 26; 347, p. 140, n. 49, 50; 572, pp. 324, n. 75, 325, n. 81; 575, p. 327, n. 95; 596, p. 342, n. 45, 47; 656, p. 411, n. 52. Indictments and Informations, 31 C. J., Sections 463, p. 847, n. 94; 467, p. 849, n. 42.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen*, Judge.

AFFIRMED.

*John E. Heffley, Stephen K. Owen* and *Earl Borchers* for appellant.

(1) Instruction numbered five is misleading, confusing, and is a comment on instructions one, two and three, and is nothing more than a statement of an abstract proposition of law. The court should not give instructions containing merely an abstract proposition of law. Wein v. State, 14 Mo. 124; State v. Holmes, 239 Mo. 465. Mere dissertation on the law, no matter how correct as a general essay, nor how well supported by

authorities, may not explaih to the jury the law arising on the evidence and should not be given. State v. Else, 201 Mo. 561; State v. Little, 228 Mo. 273.; State v. Price, 115 Mo. App. 656. (2) Instruction numbered six fails to properly define manslaughter, and fails to define "heat of passion" used in instruction ten. Among other definitions in this instruction the court defines manslaughter as follows: "Manslaughter for the purpose of this trial is the wilful killing of a human being without deliberation and without malice aforethought," and in instruction numbered ten the court uses the phrase "in the heat of passion." Manslaughter is a crime recognized by common law, and the phrase "in the heat of passion" is one of the elements of the same when employed in instructions descriptive of the facts in its technical sense. State v. Strong, 153 Mo. 548; State v. Andrew, 76 Mo. 101; State v. Forsyth, 89 Mo. 667; State v. Hickman, 95 Mo. 330; State v. Findley, 150 S. W. 1054; State v. Skaggs, 159 Mo. 581; State v. Cariou, 266 Mo. 82. (3) In instruction numbered seven, the court not only instructed as to what constituted murder in the first degree, but commented upon the evidence. There are two kinds of presumptions, presumptions of law, and presumptions of facts. The jury should be allowed to try the facts. 3 Greenleaf on Evidence (16 Ed.) sec. 31; State v. Swarens, 241 S. W. 934; Sec. 4005, R. S. 1919. (4) The failure to sustain defendant's demurrer at the close of the case on account of a variance between the pleading and the proof, and the failure after the overruling of the demurrer to properly instruct the jury on this phase of the case, were errors. The information filed charges defendant with the murder of one John Less, whose real name was John Lesneski, the name of Less being merely an adopted name. Sec. 3907, R. S. 1919, was enacted to cover defects of this kind, and the trial court must make a finding that the defect is not material. As it is the duty of the court to instruct the jury on all he law pertaining to the case, it is the duty of the court to instruct on this point. State v. Neibekier, 184 Mo. 218.

The testimony of Frogge is not part of the *res gestae*, and does not come within the rule of being hearsay testimony, and it is not admissible as a dying declaration. State v. Kellar, 201 Mo. 614; State v. Heindricks, 120 Mo. 674; 24 Cyc. 80; State v. Kyle, 225 S. W. 1012; State v. Parker, 172 Mo. 202; State v. Wilkes, 213 S. W. 120. Neither could it be admitted on the theory that it was a dying declaration as it does not come under any of the rules governing admission of a dying declaration. Lipscomb v. State, 75 Miss. 550.

*Robert W. Otto,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

(1) Whenever on the trial of a felony or misdemeanor there shall appear to be any variance between the statements in the information and the evidence offered in proof in the surname, such variance shall not be deemed grounds for acquittal of the defendant, unless, the court before which the trial was held shall find that such variance is material to the merits of the case, and prejudicial to the defendant. The trial court did not so find. It was plainly shown that John Less and John Lesneski were one and the same individual. Sec. 3907, R. S. 1919; State v. Tracy, 243 S. W. 178. (2) Statements relative to an injury made immediately after receiving such injury are competent evidence as part of the *res gestae,* hence the testimony given by the police officers that John Less told them immediately after he was shot that Charley Hart, the defendant, shot him, was properly admitted. State v. Baker, 209 Mo. 450.

WHITE, J.—The defendant appeals from a judgment of the Circuit Court of Buchanan County, following the verdict of the jury wherein he was found guilty of murder in the first degree, and his punishment assessed at imprisonment in the penitentiary for life. He was charged with killing, October 18 or 19, one John Les-

neski, known by the name of John Less, a police officer of the city of St. Joseph.

About midnight October 18th, Less and Officer Buxton, motorcycle policeman, rode up to the front of the Elms Hotel at Felix and Third Street, parked their motorcycles, and saw defendant Charles Hart and a man named France get out of a taxicab and enter the Elms Hotel. Buxton knew there was a "pick-up" order out for Hart. Other officers were present about the hotel at the time. After some maneuvering France and Hart were arrested. A patrol wagon was summoned and drove up to the front of the hotel. France and Hart, in the custody of the officers, passed through a string of vehicles next to the curb to the patrol wagon. France got into it. Hart walked around the wagon, threw down his overcoat and started to run. Officers Less, Buxton and others gave chase. He ran a short distance to Felix Street, when Less overtook him and, on the point of seizing him exclaimed, "I have got him Buck." Hart turned, pulled a revolver out of his shirt front and fired at Less. Less stumbled to the ground and Hart continued his flight with the officers in chase firing at him. The incident was witnessed by officers Buxton, Idlett, Crane and others. All of them swore they saw Hart draw a revolver from the front of his clothes, saw the flash of the weapon, and saw Less fall. Less was within a very few feet of Hart at the time. Hart had been searched when they arrested him in the hotel, but no weapons was found on him. Less was taken to the hospital and died October 22nd. An autopsy discovered a steel-jacketed 45-calibre bullet. He was shot in the region of the hip; the intestines were perforated, and the bullet lodged in the muscles of the back. He died from the effect of the wound.

Hart was arrested October 22nd, at a farm owned by a man named Huff; he was in bed when the officers found him, and wounded in the leg. He had a revolver in his hand under the cover. The officers seized him by the wrist and took the weapon from him. The revolver was fully loaded; did not appear to have been fired recently;

was rusty, and appeared not to have been cleaned for two or three months.

The defendant offered no evidence at the trial and the jury returned a verdict of guilty, as stated.

I. Error is assigned to the giving of instruction numbered 5, which reads as follows:

Specific Direction. "The court instructs you that before you can find the defendant guilty of any crime you must find and believe from the evidence that defendant Hart shot and killed John Less."

It is objected that this instruction is misleading and confusing, and states nothing more than an abstract proposition of law. Certainly it does not state an abstract proposition, because it requires a finding of a specific fact by the jury, without which finding the defendant could not be guilty. It is not confusing; it does not direct a verdict, but it states one fact which must be found before a verdict of guilty could be returned. Other instructions sufficiently point out to the jury what other facts it was necessary to find in order to return a verdict of guilty.

II. Instruction numbered 6 is objected to because it thus defines manslaughter: "Manslaughter for the purposes of this trial, is the willful killing of a human being without deliberation and without malice aforethought."

Manslaughter.

It will be noticed that this part of the instruction does not attempt to give a general definition of manslaughter, but manslaughter for the purposes of this trial. It is not suggested that the court ought to have instructed on self-defense. Under the evidence, there being no self-defense, manslaughter would be the killing of Less under circumstances which would not constitute murder in the first or second degree, and that is what the instruction declares.

It is argued that heat of passion is an element of manslaughter, and that "heat of passion" should be de-

fined. Another instruction, No. 10, authorized the jury to find the defendant guilty of manslaughter if he killed Less in the heat of passion.

When the former statute defined several grades of manslaughter it was held necessary and proper to define "heat of passion," because manslaughter in the fourth degree was defined to be a killing which would be manslaughter at common law, and at common law "heat of passion" was a necessary element in the crime of manslaughter. But the statute was amended in 1919, and degrees of manslaugher were abolished. Section 3236, Revised Statutes 1919, now defines manslaughter as every killing of a human being by the act, procurement or culpable negligence of another, not declared to be murder or excusable or justifiable homicide.

That definition covers cases where homicide occurs in the heat of passion, and many cases where it does not. This court explained that matter in case of State v. Gore, 237 S. W. 993, 1. c. 996-997.

The instruction therefore is entirely correct.

III. Objection urged to the form of instruction numbered 7, which contains the following:

"He who wilfully, that is intentionally, uses upon another at some vital part, a deadly weapon such as a pistol, loaded with gunpowder, lead and ball, must in the absence of qualifying facts be presumed to know that the effect is likely to be death, and knowing this, must be presumed to intend death. Which is the probable consequence of such an act, and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly and from a bad heart."

In objecting to that instruction it is argued that the jury must pass upon the facts, and the question of intent is one of fact which must be submitted to the jury. Appellant's counsel cites the case of State v. Swarens, 241 S. W. 934, where an instruction told the jury that, from the recent possession of stolen property by the defendant, a presumption arose that he was the thief. This

court held the instruction erroneous; that such possession was evidence to be submitted to the jury, and the jury must consider it as any other fact tending to show guilt. It was like other circumstantial evidence tending to establish a provable fact. Some facts to make out a case, at times are not susceptible of direct proof and courts must have recourse to presumptions which arise from proven facts. Such a fact as the intent with which a crime is committed, the operation of the criminal's mind, cannot be proved by direct evidence. The jury, and the witness who observes the criminal act, can only judge what is in the mind of the perpetrator by the act itself. The intent necessarily prompts the conscious act and must be presumed. Hence it is universally held that every one is presumed to intend the natural and probable consequences of his own intentional act. [State v. Patterson, 116 Mo. 513; 16 C. J. 1. c. 81.] It follows that where one uses a weapon likely to produce death in making an assault upon another, and death ensues, the one who commits the act is presumed to intend death. [State v. Musick, 101 Mo. 260; State v. Little, 228 S. W. 1. c. 797.]

It has been held that where a defendant swears he did not intend to kill one whom he assaulted with a deadly weapon, his testimony could not be made the basis of an instruction. [State v. Strong, 153 Mo. 548.] It is for the jury to say whether the weapon used was likely to produce death, and whether it was used in a manner to cause that effect. True, the intent to kill is an issuable fact. For instance, it may be shown that the killing was accidental. In such case, the fatal use of the weapon was not intentional. In the instruction here the jury were required to find that the weapon used by the defendant, without just cause or provocation, was used *intentionally* at a vital part, and it told them that, in the absence of qualifying facts, the defendant was presumed to know the effect of his act and is presumed to do it with a wicked intent. The instruction thus elimi-

nates every feature of such an act which would prevent the presumption of malicious intent.

IV. Error is assigned to the failure of the court to sustain the defendant's demurrer to the evidence at the close of the case because of an alleged variance between the pleading and the proof. The information charges the defendant with the murder of "John Less." The evidence showed that the murdered officer was "John Lesneski;" his property was held in that name, he was commissioned as a policeman in that name, and his money deposited in the bank in that name. It was proved, however, without contradiction, that he was generally known and called by the name of "John Less." His wife "went by" the name of Mrs. John Less.

Variance.

Section 3907, Revised Statutes 1919, provides that in any trial of a felony or misdemeanor, any variance between the information and the proof, in the Christian name or surname or both, of any person therein named or described, shall not be deemed ground for an acquittal of a defendant unless the court before which the trail shall be had shall find that such variance is material. The trial court in overruling the demurrer to the evidence must have found the variance was not material, since the demurrer was presented upon that ground.

It is urged here that the court should have submitted the question to the jury, with appropriate instruction, citing the case of State v. Neibekier, 184 Mo. 211. In that case the trial court (1. c. 218) instructed the jury that if they believed that the name mentioned in the indictment was the name by which the deceased was known or called, although it was not his real name, it did not affect the defendant's guilt or innocence, and they should not consider it in arriving at a verdict. This court did not say that the instruction was necessary, but said it was clear that the trial court did not deem the variance material. The alleged variance cannot avail the defendant unless the *court* shall find it material. In that sec-

tion there is no authority for the submission of such issue to the jury. In an early case, State v. Curran, 18 Mo. 320, where the charge was assault with intent to kill, the name of the person assaulted was not proven to be the same as that mentioneed in the indictment. The court said, l. c. 321: "If a person is known by two names, or if he has a real name and one which is an abbreviation or corruption of the other, or is commonly used for the other, the indictment may use either." There never has been any variation from that doctrine. Where it is necessary to state the name of a third person in an indictment or information, it is a mere question of identity. [31 C. J. 847.] Where it is shown that the person named is well known by the name used in the indictment, there is no variance although such name is not the true name. [31 C. J. 849.]

Besides, Section 3908, Revised Statutes 1919, provides that "no indictment or information shall be deemed invalid, nor shall the trial, judgment, or other proceeding thereon be stayed, arrested, or in any manner affected . . . for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

The defendant killed a policeman named John Lesneski; he was charged with killing John Less, the name by which the murdered man was known. How could the use of the latter name "prejudice the substantial rights of the defendant upon the merits?" If that statute means anything it means that before the defendant could take advantage of an alleged error like this in the information he must show that it prejudiced him in his defense upon the merits.

V. After John Less was shot, officer Frogge went to him and thus testified to what occurred:

**Res Gestae.**

"Q. What did John Less say when you got there and found him in that position that you indicated a while ago? A. He said: 'Send me to the Sisters'

Hospital; call my wife; Charlie Hart shot me. Get him, boys.' "

This testimony was objected to and moved to be stricken out; the court overruled the motion, and the defendant assigns error on the ground that it was not part of the *res gestae.*

Frogge testified that he heard the shot at Third and Felix streets, where Less was shot, and he ran down to where Less was; that the time did not take over a minute and a half. He said the distance was a block, and, since he ran, he probably overstated the length of time it took him to get there. He found Less down on the sidewalk, "crouched over" and immediately the conversation occurred, as quoted.

The court has several times held admissible evidence of this character as *res gestae,* under circumstances quite similar to this, where a person mortally wounded, immediately after receiving his death blow, makes a statement. [Unrein v. Oklahoma Hide Co., 295 Mo. 353, 244 S. W. 924, 1. c. 928; State v. Baker, 209 Mo. 1. c. 450; State v. Kelleher, 201 Mo. 1. c. 632; State v. Martin, 124 Mo. 514, 1. c. 525-529.]

In the case last cited the authorities were reviewed at length. It is true that such evidence, in order to be *res gestae,* must arise naturally out of the circumstances which caused it; it must be undesigned and spontaneous. Less had received a mortal wound, and had collapsed upon the sidewalk; Frogge appeared running from the distance of a block. The excitement of the wounded man shows that the incident was absorbing his mind. His remark was anything but narration or a premeditated statement. He was exclaiming. His impressions came out in his exclamation: "Send me to the hospital; call my wife; Charlie Hart shot me. Get him, boys." Everything in it shows a lack of design or previous thought, and in accordance with the cases cited it was admissible.

VI. When Hart was arrested three days later he was found in bed on a farm; a revolver was taken from

his possession, which was introduced in evidence as "Exhibit F." It was a 38-calibre Army revolver, rusty, fully loaded, and had not been fired lately. The physicians who performed the autopsy said that Less was killed by a 45-calibre bullet. Appellant claims there was error in admitting this revolver in evidence because it did not tend to show that Hart committed the murder; on the contrary it tended to show that he could not have done it with that weapon. He could not have been harmed by it, so far as it had any tendency to show he used the weapon in committing the offense. He had it in his hand under the covers at the time he was discovered by the officers. It was admissible for the purpose of showing that he contemplated resisting arrest, and that he was armed when arrested.

The officer who arrested him swore, without objection, that he had the revolver in his hand at the time, and described it without objection; all evidence in relation to it was before the jury. It could not have been prejudicial to exhibit in addition the weapon itself because it was not of a character to excite either prejudice or passion. Appellant has not indicated how the introduction of the exhibit might have been prejudicial to the defendant.

The judgment is affirmed. All concur.