THE STATE v. LAWRENCE MABRY, Appellant.—22 S. W. (2d) 639.

Division Two, December 11, 1929.

*H. K. Bente* and *Irwin & Bushman* for appellant.

*Stratton Shartel,* Attorney-General, and *A. M. Meyer,* Assistant Attorney-General, for respondent.

244

WHITE, J.—The appeal is from a sentence of death imposed upon the defendant after conviction of murder in the first degree.

One Alfred Lamm, a resident of Sedalia, February 4, 1928, just after he had finished his supper, heard a shot and almost immediately William Busch staggered into his house, saying that he was shot; that somebody had tried to stick him up, and he ran. Two physicians examined Busch, and found that he was shot in the hip from the rear, the bullet passing through his body and coming out near the median line in front. He was taken to the hospital and died February 10th, following.

Defendant Lawrence Mabry, in company with one Ellis Collins, went to Kansas City the following morning, and later went to Warrensburg and was there arrested, charged with the murder of Busch. While in the custody of the Sheriff of Johnson County, February 16, 1928, the defendant signed a written confession, in which he stated that in Sedalia he and Ellis Collins, about six-thirty, started out to hold up somebody. They saw "this guy." They told him to stick 'em up and he refused, and Mabry shot him. Collins did not have a gun. Mabry did not know that he had hit him until he saw "it" in the papers the next morning. Then he and Collins went to Kansas City, came to Warrensburg, and were arrested.

The next day, February 17, 1928, while still in the custody of the sheriff, defendant made another written confession, in which he went more into detail concerning the murder. He said that he and Collins, on February 4, 1928, abouty six-thirty decided to hold up somebody. They hid in an alley to wait, and they saw

a man coming along. Defendant stepped out, pointed his revolver at him, and told him to hold up his hands, and the man then turned and ran past. He ran about forty or fifty feet when the defendant fired at him. Right after the shot defendant turned and ran. Defendant did not see Collins any more until next morning. Before that he had seen an item in the papers about William Busch having been shot. The two, Sunday night, February 5th, decided they had better leave town. The statement then describes the way they traveled and the subsequent arrest.

The defendant objected to these confessions on the ground that they were not voluntary, but forced by the officers. The State put on the sheriff and other witnesses to prove that the statements were voluntary.

Rose Mary Burrowes, reporter for the Sedalia Democrat, testified that, after the statements signed by the defendant had been made, she heard a conversation between Mr. Rucker, the prosecutor, and the defendant, in which defendant said that he did not want to talk any more about the case; he had made a confession and told the sheriff everything.

Allen Scruton, advertising man for the Sedalia Democrat, testified that he heard Mr. Rucker say to the defendant, "You know who I am, don't you?" Defendant answered, "Yes." Then Judge Couey said, "We are going to ask you some questions, and anything you say will be used against you on the trial." Defendant said he understood; that he had already made a statement to the Sheriff of Johnson County, and did not feel like going over the same thing already signed. Other witnesses testified to statements made by defendant to the effect that he had made his statement to the sheriff, and did not care to talk further.

The defense was an alibi. The defendant introduced a number of witnesses in the attempt to show that he was not at the place where Busch was shot at or about the hour when the shooting took place.

The State, in rebuttal, offered evidence of several witnesses to show that defendant had a bad reputation.

I. Error is assigned to the admission by the trial court of the confessions on the ground that the *corpus delicti* was not first proven so as to make them admissible. It may be noted that, when the confessions were offered in evidence, the defendant did not object on that ground, but objected only on the ground that the confessions were obtained by coercion and intimidation, and offered evidence to that effect.

246

The evidence tending to show *corpus delicti* appears in the statement of Alfred Lamm and the physicians. Lamm heard a shot just after he had finished supper; he and his family were sitting at the table and discussing the shot when the front door opened and William Busch staggered in and said, "I am shot." The witness asked, "What happened? Busch replied: "Somebody tried to stick me up and told me to stick 'em up and I ran." The bullet entered the left hip below the crest of the hip behind the ileum, ranged upward and forward and came out about an inch and a half to the left and an inch below the navel. From the nature of the wound the deceased must have been shot by some one else. That he was shot by some one, who was intending to rob him, is shown by his statement immediately afterwards. That would constitute murder in the first degree. The perpetration or attempt to perpetrate a felony stands in lieu of deliberation and premeditation, and a homicide committed in that attempt is murder in the first degree. [State v. Bobbitt, 215 Mo. l. c. 33; State v. Garrett, 276 Mo. l. c. 313, and cases cited.] These decisions have been followed by other cases to that effect, so on that evidence the *corpus delicti* of murder in the first degree was fully made out.

II. It is claimed, however, by defendant that the evidence of Lamm as to the statement made by Busch on coming into his house ▄▄ ▄▄ was not competent because hearsay. Busch staggered into his house in the excitement of the moment, apparently without knocking. From the time Lamm heard the shot until Busch made the statement was a matter of seconds. Lamm testified it was just time for his daughter to run down a flight of stairs. The statement of Busch under the circumstances was *res gestae* and therefore admissible. A very similar condition was presented in the case of State v. Hart, 309 Mo. 77, l. c. 88, where several cases are cited. There can be no question as to the first part of the statement, "Mr. Lamm, I am shot." It was an exclamation, undesigned, spontaneous, and rising immediately out of the condition in which the wounded man found himself. The following statement, "Somebody tried to stick me up and told me to stick 'em up and I ran," while in the form of a narrative in answer to a question, is a part of the same statement, so immediately connected with his exclamation that it comes within the rule laid down in the Hart case.

The interposition of the question by Mr. Lamm did not suggest a deliberate narrative of the cause of Busch's injury. Lamm did not ask "How did you come to be shot?" or "What was the cause of the trouble?" or "Who was it shot you?" but "What happened?" Busch had come in with the exclamation, "I have been

shot." Lamm, as if not clearly understanding, asked "What happened?" It was the excitement in Busch's mind induced by the fatal wound a few seconds before, which caused him without premeditation to say what in fact had happened. Somebody tried to hold him up, and shot him as he ran.

But even if that part of the statement is excluded and we consider only the exclamation, "Mr. Lamm, I am shot," followed by the testimony of the physicians showing the nature of the wound, it makes out a case of murder. There is a rule that when death ensues from a wound by a deadly weapon, in the absence of any explanatory circumstances a presumption of murder in the second degree arises. Here is the exclamation that the victim had been shot. He was shot from the back. The proof of a murder was thus established. It is not necessary that a complete *corpus delicti,* such as would warrant a conviction by connecting the defendant with it, must be proven independent of the confession. It has been said in several instances, "The proof of circumstances which correspond with the circumstances related in the confession may be considered in determining whether the *corpus delicti* has been proven." "Full proof of the *corpus delicti* independent of the confession of the defendant is not required." [State v. Morro, 313 Mo. l. c. 108; State v. Emerson, 318 Mo. l. c. 643; State v. Skibiski, 245 Mo. l. c. 463; State v. Flowers and Jones, 311 Mo. l. c. 515.] Here is clear proof of a murder without proof of deliberation and premeditation. But the circumstances justify an inference that there was something more than a mere combat. The confession of the defendant supplies additional details, which show that the murder was accomplished in an attempt at robbery, and murder in the first degree as charged was proven.

III. It is further claimed that the confessions were inadmissible because they contained proof of other crimes. Each of those confessions states that the defendant and Collins stole a Pontiac in Kansas City and also a Chevrolet coupe in Kansas City, and also stole a Ford Tudor in Warrensburg and other articles. However, when the confessions were read to the jury, all those parts of each confession relating to stealing were omitted. They were not presented to the jury, and we are not confronted with the necessity of determining whether the proof of other crimes in making their escape was admissible in evidence against this defendant.

Defendant, however, argues that simply because those things were in the confession, the whole confession was inadmissible. We are unable to find any reason or authority for such a position.

IV. Appellant assigns error to the giving of Instruction "D" on circumstantial evidence. That instruction is in the usual form often approved by this court.

V. Appellant assigns error to the giving of Instruction "E" by the court, which told the jury that if the defendant Lawrence Mabry acted jointly or in concert with Ellis Collins, etc., in an attempt to rob deceased, etc., they should find him guilty. The objection is that there was no evidence to show that they were acting jointly. The confession of the defendant was that he and Ellis determined to rob somebody, and that the attempt to hold up Busch was the result of that agreement. The instruction was warranted by the evidence. The same may be said of Instruction "F," to which the appellant objects.

VI. Appellant further assigns error to the giving of Instruction "H" on the ground that it invades the province of the jury by assuming controverted facts. That instruction tells the jury that, if they find from the evidence that the defendant made a statement or statements, they must consider the statements together in the light of the circumstances; that the defendant was entitled to what he said for himself, if true, and the State was entitled to the benefit of anything he may have said against himself, proven by the State. In general the instruction is in the usual form of such cautionary instruction relating to statements by defendant.

VII. Appellant further objects to the giving of Instruction "J," which told the jury that, if they should find the defendant guilty of murder in the first degree, then they should give due consideration to all the facts and circumstances proved, and in their discretion assess his punishment either at death or life imprisonment. The objection to that instruction is a long argument to the effect the State elected to prosecute the defendant on attempted robbery, in that there was failure to prove actual robbery, and that said instruction is not based on the evidence. We are unable to find any validity in that assignment. Throughout the argument of the defendant is that under the circumstances there is no proof of murder in the first degree, that the killing was not proved to be deliberate and premeditated, and that the instructions on murder in the first degree were therefore erroneous, each of which is quite beside the question, as we have pointed out above. It was unnecessary to prove those elements of the crime; the attempt to rob takes the place of deliberation and premeditation.

VIII. Appellant assigns error to the failure of the court to reprimand counsel for the State for remarks made in the course of the closing argument. We are unable to find in the motion for a new trial any reference to the argument of counsel.

The sentence was pronounced June 28, 1928, ordering the execution of defendant July 30, 1928.

The judgment is affirmed and execution ordered in accordance therewith, Friday, Jan. 31, 1930. All concur.