The State v. L. C. Stallings, Appellant.—64 S. W. (2d) 643.

Division Two, October 28, 1933.

*L. R. Jones* and *Russell L. Dearmont* for appellant.

*Roy McKittrick,* Attorney-General, and *James L. HornBostel,* Assistant Attorney-General, for respondent.

WESTHUES, C.—This is an appeal from a conviction of manslaughter. It is the second appeal in the case. [See 326 Mo. 1037,

33 S. W. (2d) 914.] At the first trial appellant was convicted of murder in the second degree and his punishment was fixed at fourteen years' imprisonment in the penitentiary. The judgment of conviction was reversed and the cause remanded for a new trial. The second trial resulted in a conviction of manslaughter with a punishment of eight years' imprisonment in the penitentiary.

From the State's evidence we learn that the shooting, which resulted in the death of Mrs. Bertha Stallings, occurred on the evening of September 14, 1928, at a public dance hall near the city of Cape Girardeau, Missouri. The dimensions of the dance floor were 100x75 feet. A large number of people were present, among them the appellant; the deceased, who was the former wife of appellant, and Jerry Hagan. These three were the principal characters in the shooting affair. Deceased had obtained a divorce decree from appellant a short time prior to this date. Jerry Hagan was a large robust man, weighing in excess of two hundred pounds. Appellant was a small man. He had been ill and at the time was frail and weak. During the evening at the dance hall, a short time before the shooting, a man named Cunningham asked the deceased for a dance. Appellant was nearby and interfered, saying that he did not want his former wife to dance. Cunningham thereupon walked away. Appellant then asked his former wife to dance with him and she refused. A short- time thereafter Jerry Hagan asked Mrs. Stallings to dance with him. Appellant approached and stated to Hagan with a curse that he was not going to dance with Mrs. Stallings. Hagan testified that at this moment appellant made a movement as if to reach for a gun and he, Hagan, struck appellant causing him to fall to the floor; that immediately thereafter and before appellant got up he drew a pistol and fired at him, Hagan. One bullet struck Hagan in the hip and another passed through his shirt. The State offered evidence by at least six witnesses that appellant, after shooting at Hagan, walked to where his former wife was standing, took her by the shoulder or hand and deliberately fired a shot into her chest. Deceased fell to the floor and died before she could receive medical aid. The State's evidence also disclosed that immediately after the shooting appellant was struck a number of times by various persons including an officer. He was taken to a doctor's office for treatment. His eyes were badly swollen and there was evidence that he had received a number of severe blows about his head and face.

Appellant's version of the affair was about as follows: He denied having said anything to Jerry Hagan or to deceased before the difficulty. He testified that when the music commenced for that particular dance he was walking toward a lady whom he intended to ask for a dance; that without any provocation whatever Hagan struck him causing him to fall to the floor; that he attempted to get up

when Hagan again struck him knocking him to the floor the second time; that Hagan was advancing as if to inflict further injury upon him. Appellant testified that Hagan being a much larger man he was in fear of his life and, therefore, drew his pistol and fired at Hagan to prevent a further assault; that he did not see his former wife at the time and did not know she had been shot until informed thereof when he was being treated at the doctor's office. Appellant was corroborated in his testimony by evidence of a number of witnesses who were present at the time.

It is not difficult to visualize the confusion that naturally followed the shooting. This accounts for the conflict in the testimony of the State's as well as defendant's witnesses. The State's witnesses did not agree upon the number of shots fired by appellant at deceased, or upon many material facts in the case. However, the State's evidence was sufficient and the trial court properly submitted the case to the jury by instructions upon the questions of murder in the first and second degree and manslaughter.

The court also, on appellant's behalf, properly instructed the jury on the question of self-defense, that if appellant accidentally shot deceased while he was lawfully defending himself against an unjustified assault by Hagan they should find him not guilty.

A number of questions were presented to the trial court at the second trial that were not in the case on the first appeal. The trial court's rulings on these questions are assigned as error.

■ Appellant filed a plea in bar contending that he had been acquitted of murder in the first degree at the first trial because the jury found him guilty of murder in the second degree. He, therefore, contends that the question of murder in the first degree should not have been submitted to the jury. In this appellant is in error. If a conviction on a first degree murder charge is reversed on appeal and the case remanded for a new trial the cause stands as though there had been no trial at all and the defendant may be tried on the information or indictment charging murder in the first degree even though the defendant was found guilty of manslaughter at the first trial. The reasons for this rule of law will be found in State v. Billings, 140 Mo. 193, 41 S. W. 1. c. 780 (3); State v. Simms, 71 Mo. 538, and State v. Austin, 300 S. W. 1083, 1. c. 1085 (4, 5), 318 Mo. 859. [See, also, Sec. 23, Art. 2, Mo. Constitution.]

■ It is urged that the trial court committed prejudicial error in admitting the evidence of witness Mrs. Willa to the effect that deceased, a number of years prior to the homicide and while appellant and deceased were living together as husband and wife, came to the home of the witness in a frightened condition and disclosed evidence of having been assaulted. It is argued that this evidence was too remote and also that it was not shown that appellant com-

6

mitted the assault. The State's evidence did not disclose that appellant committed the assault. Evidence of previous difficulties between the parties may be shown as tending to prove the state of feeling existing between the parties. [State v. Bowenkamp, 39 S. W. (2d) l. c. 754 (2), and cases there cited.] It is essential, however, to definitely establish that the defendant was a party to the difficulty. This was not shown in this case and, therefore, the evidence was inadmissible. On appellant's motion to strike out the evidence the trial court ruled as follows: "I don't know, I am leaving it there for the jury." The evidence left the impression that appellant was a wife beater. This would naturally tend to arouse the prejudice of the jury against appellant. On a retrial this evidence and evidence of like nature should not be admitted. █ Evidence was also admitted that deceased on the night in question, prior to the homicide, appeared to be frightened. Unless it can be shown that appellant was responsible for this condition the evidence should be excluded.

█ Appellant offered to prove that while he was at the doctor's office being treated for his injuries a short time after the shooting, some one came in and announced that Mrs. Stallings had been shot and was dead. Whereupon appellant exclaimed: "My God, I didn't intend to shoot mama." The trial court rejected this offer and this ruling is assigned as error. Appellant insists that the evidence should have been admitted because the statement made by him, appellant, was a part of the res gestae. The State contends that it was a self-serving statement and too far removed from the scene of the transaction so as to be admissible under the res gestae rule. This presents a difficult question. If the statement was no part of the res gestae it was inadmissible because self-serving. If we view the situation in the light of the State's evidence there is no doubt that the trial court was correct in its ruling. If we consider the evidence in support of appellant's theory, the question of the correctness of the trial court's ruling becomes more difficult. Appellant testified that he at no time saw deceased after Hagan struck him and that he did not know deceased had been shot until he was so informed at the doctor's office when he made the exclamation. Appellant was corroborated in his defense, by several witnesses, that the shooting of deceased was purely accidental.

The lapse of time between the shooting and the exclamation did not of itself prevent it from forming a part of the res gestae. [16 C. J., p. 572, sec. 1114; 10 R. C. L. 978, sec. 161.] Appellant immediately after the shooting was subjected to ill treatment, which the doctor testified was sufficient to daze him. He was surrounded by officers and others, who were in a high state of excitement, and taken to the doctor's office. The doctor testified that appellant was conscious but seemed dazed when he arrived at his office. Under

these circumstances, if the statement made to the effect that Mrs. Stallings was dead, was the first information appellant had that deceased had been shot, there seems to be no good reason why his exclamation should not be treated as part of the res gestae. In 16 Corpus Juris, page 575, section 1116, we read as follows:

"Acts and statements of accused constituting a part of the res gestae are admissible in evidence. The res gestae includes statements made by accused after the commission of the crime, even though they are exculpatory in character, provided they were spontaneously made while the mind was still under the influence that governed it at the time that the event took place, and provided they were made at such a time and place and under such circumstances as to exclude the idea of design, fabrication, afterthought, or a mere retrospective narration of a past occurrence."

In 3 Wigmore on Evidence, section 1750, we find the following:

"It is to be observed that the statement need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated."

In 10 Ruling Case Law, 974, we read as follows:

"All declarations or exclamations uttered by the parties to a transaction which are contemporaneous with and accompany it, or which are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design, and which are calculated to throw light on the motives and intention of the parties, are admissible in evidence as part of the res gestae. It is not easy, always, to determine when a declaration is a part of the res gestae. It is dependent upon the particular circumstances under which the declaration is made. The courts recognize the difficulty of laying down upon this subject a rule that may be applied in every case. The tendency of recent adjudications is to extend rather than to narrow the scope of the introduction of evidence as part of the res gestae."

In Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. (2d) l. c. 32, the Court of Appeals of Kentucky said:

"The exclamation must be the act talking for itself, not the person talking about the act. It must be the apparently spontaneous result of the occurrence operating upon the perceptive senses of the speaker (Illinois Cent. Ry. Co. v. Lowery, 184 Ala. 443, 49 L. R. A. (N. S.) 1149) rather than the result of reasoning from collateral facts."

The above was quoted and approved in Barton v. Commonwealth (Ky.), 38 S. W. (2d) l. c. 220. In the case of State v. Taylor, 330

8

Mo. 1036, 51 S. W. (2d) 1003, we held statements made by the injured party thirty minutes after the injury had been inflicted admissible as part of the *res gestae,* because under the circumstances under which they were made they were the natural and spontaneous utterances of the injured party connected with and arising out of the main transaction. In the case before us, had appellant made the exclamation at the time of the shooting, there would be no doubt that it would be admissible under the *res gestae* rule. The time which elapsed between the main event and the exclamation is the only argument against its admissibility. However, under the rulings of well-considered cases and text-writers the ultimate test is spontaneity and logical relation to the main event. [State v. Hart, 309 Mo. 77, 274 S. W. l. c. 388 (7); State v. Martin, 124 Mo. 514, 28 S. W. 12; Leahey v. Ry. Co., 97 Mo. 165, l. c. 172, 10 S. W. 58, and cases there cited and discussed; Steel v. Commonwealth (Va.), 160 S. E. 185; Garrison v. State (Tenn.), 40 S. W. (2d) 1009; State v. Korth (Iowa), 217 N. W. 236, l. c. 238 (7, 8); O'Neal v. State (Ga.), 158 S. E. 51; 16 C. J. 572, sec. 1114; Wigmore on Evidence (3 Ed.), sec. 1750; 10 R. C. L., p. 978, sec. 161.] The fact (taking appellant's evidence as true) that appellant did not know deceased had been shot until informed thereof immediately prior to the exclamation and the further fact that appellant had been maltreated and was at the time still laboring under the excitement, precludes the idea of deliberation and fabrication and destroys the argument of the length of time that had elapsed.

On a retrial the evidence of the declaration should be admitted because under defendant's evidence it formed a part of the *res gestae.*

The jury will be able to determine and pass upon the question as to whether or not the statement was spontaneously made or whether it was fabrication. If the jury should believe the evidence of the six or more witnesses who testified that appellant deliberately shot deceased they of course will disregard all of appellant's evidence.

The trial court, by Instruction No. 6, informed the jury that if appellant fired at Hagan in lawful defense of his person to prevent an assault on him by Hagan and in doing so unintentionally and accidentally shot Mrs. Stallings then in that event they should acquit appellant. This instruction was proper and in line with our holding on the former appeal. [See 326 Mo. 1037, 33 S. W. (2d) l. c. 91 (2).] It is contended that Instruction No. 7, given by the court pertaining to the same subject matter, was erroneous. It reads in part as follows:

"'Now in connection with the encounter between Hagan and the defendant, the jury is further instructed that the same law of self-defense as explained in Instruction No. 6 applied to Hagan as it did to defendant and if you believe and find from the evidence in the

case that Hagan had reasonable cause to believe and did believe that Stallings was about to inflict some great personal injury on him and Hagan struck Stallings to prevent such apprehended injury from being inflicted on him, then under such facts defendant would not be justified or excused in shooting at Hagan, . . .' "

It is urged that there was no substantial evidence upon which to base this instruction. There was little if any evidence that Hagan struck appellant in self-defense. All of the witnesses testified that Hagan made the first assault. Hagan is the only witness who testified as to any demonstration made by appellant that he was going to assault Hagan. However, be that as it may, the instruction should not have been given. Instruction No. 6 fully covered the question of appellant's right of self-defense. The other instructions given for the State submitted the issues to the jury in a proper manner. If the theory of instruction number seven is followed it will deprive appellant of the right of self-defense even though he might not have had any intention whatever of doing any harm to Hagan or anyone else. Hagan had the right of self-defense if he had reasonable cause to believe and did believe that appellant was about to do him great bodily harm. However, if Hagan was mistaken as to this and assaulted appellant when appellant had no intention of harming Hagan, appellant had the right to act in self-defense. Instruction No. 7 deprived him of that right.

Since the case must be remanded for a new trial it may not be amiss to call attention to instruction number ten apparently given in appellant's favor. The instruction told the jury that the law permitted appellant to be a witness for himself and that they had no right to disregard his testimony on the ground that he was the defendant on trial charged with the commission of the crime. This instruction seems to be the converse of an instruction that was formerly approved, and giving of which has long been considered reversible error. That is, an instruction which informed the jury that a defendant was a competent witness in his own behalf, but calling the jury's attention to the fact that he was the defendant on trial and that the jury could take this into consideration as affecting his credibility as a witness. [State v. Finkelstein, 269 Mo. 612, 191 S. W. 1002; State v. Sparks, 195 S. W. 1031.] The instruction was condemned because it singled out the defendant as a witness and usurped the province of the jury in weighing his evidence. Instruction number ten given in this case, though favorable to appellant, is subject to the same criticism and should not be given even if requested because it would be error against the State.

Other assignments of error made have been examined and found

to be without merit.  For the errors indicated the judgment is reversed and the cause remanded for a new trial.

*Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.  All the judges concur.