**STATE of Missouri, Respondent,**

v.

**Gerald V. HOOK, Appellant.**

**No. 53287.**

Supreme Court of Missouri, Division No. 1.

Oct. 14, 1968.

**350**

Norman H. Anderson, Atty. Gen., Jefferson City, Timothy D. O'Leary, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Stanley E. Goldstein, St. Louis, for appellant.

STORCKMAN, Judge.

The defendant was convicted of molesting a minor with immoral intent, a felony under § 563.160, RSMo 1959, V.A.M.S. The jury assessed his punishment at one year in the county jail and a fine of $300. The defendant's appeal presents two evidentiary questions. The state's sole witness was the state highway patrolman who arrested the defendant and interrogated the defendant and his 15-year-old stepdaughter. The defendant contends that certain incriminating statements made by the stepdaughter in response to questions by the patrolman were hearsay and inadmissible. The state contends the evidence was admissible as a part of the res gestae. The defendant also contends it was error to permit the patrolman to testify that the stepdaughter told him in response to his question that she was 15 years old.

Switzer's Apple Orchard is located on the north side of Todd School Road in southern Andrew County about three and one-half to four miles from where the defendant lives in St. Joseph. On January 30, 1966, at about 12:30 a.m., R. D. Matthews, a member of the Missouri State Highway Patrol, in uniform and on duty in that vicinity, entered the Orchard from Todd School Road and observed a Comet Station Wagon parked between the rows of apple trees about 50 feet from the public road near the center entrance. The headlights of the patrol car were burning but were not pointed directly at the station wagon. Matthews stopped, got out, and as he started towards the parked vehicle with a flashlight in his hand he saw two figures come from the rear portion of the station wagon and get into the front seat. The motor of the station wagon was started, the headlights went on, and it was driven south into Todd School Road passing in front of the patrolman no more than ten feet from where he was standing. He identified himself in a loud voice and

shouted for the driver to stop. The station wagon was driven west on Todd School Road which is gravel surfaced about 15 feet wide. Mr. Matthews turned on his red flasher light on top of his car and with his siren sounding went in pursuit. The station wagon was not moving at a high rate of speed and he had no trouble catching up with it but could not get around because it was moving erratically from one side of the road to the other. The patrolman got as close as fifteen feet to the rear of the station wagon and could see the driver and the other person leaning forward, reaching down, and then straightening up as if they were putting on clothes. The station wagon came to a stop eight-tenths of a mile west of the point where it came out of the orchard onto the public road.

Mr. Matthews went to the left side of the station wagon and saw the defendant behind the steering wheel in the driver's seat. There was a young female on the passenger's side who the patrolman later learned was the defendant's stepdaughter. The girl's canvas shoes were not laced and her slacks were around the hip area and not pulled up around her waist. The defendant's shirttail was out of his trousers, his belt was unfastened and his trousers were unzipped. The patrolman learned from the defendant's driver's license that he was 39 years old and lived in St. Joseph. Mr. Matthews testified that he asked the girl her age, but before he was permitted to give her answer the jury was taken out and a preliminary hearing was had regarding the admissibility of the evidence. The nature of his proposed testimony was developed, the state's theory of admissibility was presented, and the defendant's objections were made, argued and overruled.

The trial was then resumed in the presence of the jury and Mr. Matthews further testified he asked the girl her age and she stated she was fifteen, and that at his request the defendant and the girl went with him to the patrol car. The patrolman took the driver's seat, the girl sat on the passenger's side of the front seat, and the defendant got into the rear seat. Mr. Matthews asked the girl her address and noticing it was the same as the defendant's, the patrolman asked her what her relationship to the defendant was and she said she was his stepdaughter. The patrolman then asked the defendant what he was doing in the orchard at that time of night and the defendant stated there had been some young people attending a party at their home that evening, that he accompanied by his step-daughter drove two or three of the young people to their homes, that he had kidney trouble which caused him to urinate frequently and he had stopped in the orchard for that purpose. The witness stated that the defendant appeared to be very nervous, his hands were shaking, beads of moisture were on his nose and standing out on his forehead, and he was pale in color.

Mr. Matthews then told the defendant to go back to his station wagon and wait until he was asked to come back. The patrolman waited until the defendant had done so and was seated in his car. The patrolman then began his conversation with the girl alone by asking her what had occurred in the orchard. The questions by the prosecuting attorney, Alden S. Lance, and the answers of Mr. Matthews as shown by the transcript are as follows:

"Q. What did she say?

A. I asked Miss Bond if she had been lying in the back part of the station wagon. She told me that she had been. I asked her if Mr. Hook had also been lying down in the back of the station wagon, and she said he had. I asked her if both were unclothed from the waist down and she stated they were."

[At this point defendant's counsel out of the hearing of the jury renewed his objections and moved for a mistrial which was denied.]

"Q. (By Mr. Lance) Did she say anything else at that time?

A. Yes, sir. I asked her if they had been having intercourse. She said 'no, they were preparing to have intercourse.' I asked her what she meant by 'preparing to have intercourse', and she told me that Mr. Hook was playing with her privates as they both were laying in the back of the station wagon, and as the patrol car drove up on the scene Mr. Hook told her hurry up and get dressed, theres [sic] the Police. I also asked the young lady her date of birth, which she gave me as July 15th, 1950, stated that she had been born at Rockford, Illinois.

Q. Now Officer, tell this jury whether or not Miss Bond made any statements to you at this time concerning any previous sexual relations?

MR. TURNER: I'm going to object Your Honor."

[The defendant's objection was further developed out of the hearing of the jury, was argued and sustained.]

Patrolman Matthews was the only witness in the case. No other evidence was offered. The defendant's first contention is that the testimony of Trooper Matthews regarding his conversation with the girl was inadmissible because it was hearsay. The state urges that the responses of the girl were admissible under the res gestae doctrine as an exception to the hearsay rule.

"When strictly defined, res gestae refers to those exclamations and statements made by either the participants, victims, or spectators to a crime immediately before, during, or immediately after the commission of the crime, when the circumstances are such that the statements were made as a spontaneous reaction or utterance inspired by the excitement of the occasion and there was no opportunity for the declarant to deliberate and to fabricate a false statement." 1 Wharton's Criminal Evidence, 12th Ed., § 279, p. 624. In 22A C.J.S. Criminal Law § 662(1), pp. 660–661, the term "res gestae" is similarly defined and this additional statement is made: "It is the facts and events speaking for themselves through the words or acts of the participants. The rules as to admissibility, and as to what constitutes the res gestae, are the same in criminal cases as in civil cases." See also 31A C.J.S. Evidence §§ 417–420, and VI Wigmore on Evidence §§ 1745–1750 and 1766–1768. 29 Am.Jur.2d, Evidence § 708, deals with the definition and general nature of res gestae and spontaneous exclamations and at pages 771–772 states: "Accordingly, from the very nature of the res gestae or spontaneous exception to the hearsay rule it is clear that spontaneity is the most important factor governing the admissibility of utterances sought to be admitted under that exception."

An annotation in 19 A.L.R.2d page 581, deals particularly with sex crimes and makes these distinctions:

"It is well settled that a declaration sought to be proved under the res gestae exception to the hearsay rule must have been contemporaneous with the event established by the principal act; it must spring from this act simultaneously with its occurrence, without any intervening interval or opportunity for deliberation in forming the statement. * * *

\* \* \* \* \* \*

"To avoid any confusion, it should be noted at this time there are three distinct theories upon which evidence of complaints by a victim of rape may be received in evidence: (1) to show that a complaint was made, for the purpose of negativing the supposed inconsistency of silence; (2) to corroborate the victim's testimony if she was impeached as a witness; (3) as spontaneous or res gestae declarations. The distinction is important, for under the first two theories the victim must have been a witness and the details of the complaint

may not be admissible, whereas under the third theory the victim need not be a witness and the details are admissible." It is this latter theory or category with which we are concerned in the circumstances of this case. See also State v. Richardson, 349 Mo. 1103, 163 S.W.2d 956, 960 [6].

Missouri decisions are in accord with the legal principles set out above. The principal reason for excluding testimony regarding statements made by others out of court is that the test of cross-examination of the person making them at the time they are made is unavailable as a safeguard against falsification or inaccuracy. Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, 781 [2]. The burden is on the one offering the declaration to prove facts which would warrant its admission as part of the res gestae. Wren v. St. Louis Public Service Co., Mo., 333 S.W.2d 92, 94 [1]. The essential test of whether a hearsay statement is admissible as a res gestae declaration is neither the time nor the place of the statement but whether it is a spontaneous statement produced by the event itself. Gough v. General Box Co., Mo., 302 S.W.2d 884, 889 [7]; Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, 781–782 [4]; State v. Stallings, 334 Mo. 1, 64 S.W.2d 643, 645 [7].

Viewing the evidence in this case in the light most favorable to the state, the circumstances attending the girl's responses indicate a lack of spontaneity and an opportunity for deliberation and reflection that precludes an application of the res gestae doctrine. Some indication of her state of mind appears from the fact that she did not seek out the patrolman and make complaint either when she and the defendant were discovered in the orchard or when they were overtaken almost two miles down the road. Officer Matthews estimated this interval to have been about five minutes. During preliminary questioning at the station wagon, the patrolman asked the defendant for his driver's license and reviewed it. During this interrogation the girl remained silent. The officer then took the defendant and the girl to the patrol car where he questioned the defendant further. The patrolman then asked the defendant to return to the station wagon and waited until the defendant had done so and was seated. The officer then questioned the girl in the manner heretofore set out. A spontaneous statement implies a lack of prompting. Some of the patrolman's questions were quite leading and could have been answered yes or no. The officer testified that the girl was nervous and scared, but the evidence is strongly persuasive that her nervousness and fright was attributable to being apprehended and questioned by the officer rather than to the event which is the subject of the prosecution. It is the victim's reaction to the event in question rather than the influence of the police investigation on which the hearsay statements must depend for their admissibility. 1 Wharton's Criminal Evidence, 1968 Cum.Supp., § 280, p. 633.

The state cites Missouri cases in which hearsay declarations were held admissible, such as State v. Marshall, 354 Mo. 312, 189 S.W.2d 301; State v. Stallings, 334 Mo. 1, 64 S.W.2d 643; State v. Mabry, 324 Mo. 239, 22 S.W.2d 639; State v. Gilreath, Mo., 267 S.W. 880; and State v. Hart, 309 Mo. 77, 274 S.W. 385. What constitutes a sufficient showing of spontaneity so as to make hearsay declarations admissible under the res gestae doctrine depends entirely on the circumstances of each case. Straughan v. Asher, Mo.App., 372 S.W.2d 489, 496 [10]; VI Wigmore on Evidence, 3d Ed., § 1750, p. 144. The true test is neither the time nor the place of a statement but whether under the circumstances it is a spontaneous declaration produced by the event itself. Gough v. General Box Co., Mo., 302 S.W.2d 884, 889 [7].

In the circumstances of this case, the trial court's ruling that the girl's responses to the patrolman's questions were admissible was clearly erroneous. Wren

v. St. Louis Public Service Co., Mo., 333 S.W.2d 92, 95 [3]; Meyers v. Smith, Mo., 300 S.W.2d 474; Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, 781–782 [6]; State v. Seward, Mo., 247 S.W. 150, 152 [1]; State v. Pollard, 174 Mo. 607, 74 S.W. 969, 970 [3]; State v. Hendricks, 172 Mo. 654, 73 S.W. 194, 201 [12].

 The defendant further complains that the court erred in admitting Patrolman Matthews' testimony regarding the girl's responses to his questions concerning her age. In support of this contention, the defendant cites State v. Bowman, 278 Mo. 492, 213 S.W. 64. The state contends first that the question has not been preserved for review and, if it has been, that the girl's declaration as to her age is evidence of the fact and is admissible under the res gestae exception to the hearsay rule. Since we have held that the girl's responses are not a part of the res gestae, this phase of the question is immaterial. Obtaining acceptable evidence of the age of a person alleged to have been born July 15, 1950, in Rockford, Illinois, should present no great difficulty. This essential element of the offense, however, must be shown by substantial evidence.

 The errors in the admission of evidence are obviously prejudicial and require a reversal of the judgment of conviction. The defendant urges us to discharge him because there is no showing that the state has not had an opportunity to develop its case fully, citing State v. Rogers, Mo., 380 S.W.2d 398, and State v. Walker, Mo., 365 S.W.2d 597. The state argues for a remand on the ground that the girl's age could be proved by other evidence having sufficient probative value. This alone would not be sufficient to make a submissible case. The state should not be encouraged to try its case piecemeal. Nevertheless, we will remand to give the prosecution an opportunity to determine whether sufficient proof of the alleged crime is obtainable. State v. Patton, Mo.,

308 S.W.2d 641 [10]. If such evidence is not forthcoming, the prosecution should be abandoned promptly.

The judgment is reversed and the cause remanded.

All of the Judges concur.