STATE of Missouri, Respondent,

v.

Jerry CRANE, Appellant.

No. 51926.

Supreme Court of Missouri.

Division No. 2.

Oct. 9, 1967.

Motion for Rehearing or to Transfer to Court

En Banc Denied Nov. 13, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Frank P. Motherway, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Jonathan Edwards Clarke, Elsberry, for appellant.

EAGER, Judge.

Defendant was tried in Lincoln County upon an Information charging first degree murder. Upon trial, he was convicted by a jury of second degree murder. He was represented by counsel of his own selection. After hearing evidence of a prior conviction, sentence and imprisonment, the Court assessed defendant's punishment at a term of twenty-five years. Thereafter, defendant's motion for a new trial was sustained for error in an instruction, and a change of venue was granted to the Circuit Court of Warren County. There, defendant was tried again on the same information and the jury found him guilty of manslaughter. A claim of self-defense was thus rejected by the jury. Again he was represented by the same two attorneys. The Court assessed defendant's punishment at a term of nine years, over the objections of the State. Within a period of ten days after the verdict, the defendant appeared with his chosen counsel and, both in person and by counsel, unequivocally waived his right to file a motion for a new trial; this was done after the most careful explanation and questioning of the defendant by the court. At that time, one of defendant's counsel stated that he and his co-counsel had conferred repeatedly, that he had talked at length with defendant, his wife and his mother, and also that "We do not feel that there was any error in law committed or done in any way in the case." The Court then proceeded on March 22, 1965, to grant allocution and to sentence the defendant to the term previously indicated, with an allowance for his jail time. Presumably he was transferred promptly to the Department of Corrections.

■ On June 21, 1965, defendant filed a motion seeking a trial transcript as a pauper. This was denied, there being no appeal. Thereafter, certain other motions were filed and ruled on by the trial court, but they are of no consequence here. On February 18, 1966, this Court granted defendant leave to file a delayed notice of appeal pursuant to Rule 28.07, V.A.M.R., and such a notice was filed. The time of its filing is left somewhat hazy by the transcript, but the trial court has found that it was filed within the period of one year allowed by Rule 28.07, and we accede to that finding. The Court very properly allowed defendant a free transcript of the record proper only, in view of his express waiver of a motion for new trial. Defendant's former counsel were appointed to represent him on this appeal, but they were subsequently allowed to withdraw; new counsel was appointed, and he has diligently and effectively briefed and argued this appeal.

The sole point raised on the appeal is more simply stated than decided. It consists of the contention that by the verdict in the first trial, at which defendant was charged with first degree murder and convicted by the jury only of murder in the second degree, he was placed in jeopardy on the first degree charge; that notwithstanding the granting of a new trial, he could not thereafter be put on trial again for first degree murder, and that his subsequent conviction for manslaughter was constitutionally invalid; as a corollary to this argument, counsel adds the further contention that defendant's second trial was affected by the fact that he was then charged and prosecuted for first degree murder. These contentions are made solely under the Fifth and Fourteenth Amendments to the Constitution of the United States.

■ While there might well be some doubt as to whether or not this question can properly be raised without specific objection at the trial, preserved in a motion for a new trial, we have concluded that we should consider it. The point is made as a fundamental constitutional issue which could presumably be raised later by a motion to vacate the judgment and sentence pursuant to our Rule 27.26 or in federal habeas corpus proceedings. State v. Beas-

ley, Mo., 404 S.W.2d 689; State v. Rapp, Mo., 412 S.W.2d 120.

■ The Missouri law on the subject has been clear, substantially ever since the adoption of our Constitution of 1875. Prior to that in State v. Ross, 29 Mo. 32 (1859), the· Court held that, upon facts similar to ours, the defendant could not legally be put upon trial again for first degree murder. In our Constitution of 1875, Art. II, § 23, the following provision was adopted: "That no person shall be compelled to testify against himself in a criminal cause, nor shall any person after being once acquitted by a jury, be again, for the same offense, put in jeopardy of life or liberty; but if the jury to which the question of his guilt or innocence is submitted fail to render a verdict, the court before which the trial is had may, in its discretion, discharge the jury and commit or bail the prisoner for trial at the next term of court, or if the state of business will permit, at the same term; and if judgment be arrested after a verdict of guilty on a defective indictment, or if judgment on a verdict of guilty be reversed for error in law, nothing herein contained shall prevent a new trial of the prisoner on a proper indictment, or according to correct principles of law." That provision was very promptly held to have overturned the law announced in the Ross case. State v. Simms, 71 Mo. 538. There the Court said, l.c. 541: "The change thus made in the said section overthrows the rule laid down in the case of the State v. Ross, supra, that a person who is indicted for murder in the first degree, if tried and convicted of murder in the second degree, which judgment is reversed for error in law, cannot on a second trial be tried for murder in the first degree. They are equivalent to declaring that when such a judgment is reversed for error at law, the trial had is to be regarded as a mistrial, and that the cause when remanded is to be tried anew, and when remanded, that it is put on the same footing as to a new trial as if the cause had been submitted

to a jury resulting in a mis-trial by the discharge of the jury in consequence of their inability to agree on a verdict. It is difficult to conceive what other construction can be given to the words added to said section." That view has been followed consistently in Missouri ever since. State v. Billings, 140 Mo. 193, 41 S.W. 778; State v. Beard, 334 Mo. 909, 68 S.W.2d 698; State v. Higgins, Mo.App., 252 S.W.2d 641; State v. Stallings, 334 Mo. 1, 64 S.W.2d 643. These decisions are also supported by § 556.250, RSMo 1959, which has been in effect since 1879, and is as follows: "When a defendant shall have been acquitted of a criminal charge upon trial, on the ground of variance between the indictment and the proof, or upon any exceptions to the form or substance of the indictment, or where he shall be convicted, but the judgment shall for any cause be arrested, he may be tried and convicted on a subsequent indictment for the same offense, or any degree thereof, or of an attempt to commit such offense." We also note here (footnote, Green v. United States, 355 U.S. 184, l.c. 216, 78 S.Ct. 221, 2 L.Ed.2d 199) that 19 of the 36 states that have "considered the question" follow the rule which Missouri does. And see also the complete review of state decisions shown in the annotation at 61 A.L.R.2d at p. 1141 et seq. Indeed, the federal authorities have until recently been to the same effect, both as to cases tried in the federal courts and state courts. Trono v. United States, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292; Brantley v. State of Georgia, 217 U.S. 284, 30 S.Ct. 514, 54 L.Ed. 768; Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103; Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288.

The present contention arises because of the opinion in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, which was a review of a *federal* conviction in the District of Columbia. The defendant was indicted for arson and for a felony murder, which constituted murder in the first degree; he was found guilty of arson and of

second degree murder, with no specific finding on first degree murder in the verdict. The conviction of second degree murder (only) was appealed and reversed. Upon remand, he was again tried for first degree murder and found guilty, with a mandatory death sentence imposed. He had specifically raised the defense of former jeopardy at his second trial. The Court held, in a 5–4 decision, with an extensive and vigorous dissent, that: the first jury had, by its silence, either acquitted defendant of first degree murder or had been discharged without a verdict thereon, and that either of such events constituted jeopardy; that defendant had not waived his right to a claim of double jeopardy by appealing from his second degree murder conviction; and that he could not be retried, constitutionally, for first degree murder. In so ruling, the Court professedly distinguished the case of Trono v. United States, supra. The applicable provision of the Fifth Amendment is: " * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * *." That provision is by no means as specific as is the provision of the Missouri Constitution on the subject. In a footnote to this decision at l.c. 190, 78 S.Ct. at l.c. 225, the Court said in a brief discussion of the differing rules in the state courts: "Of course, many of the state decisions rest on local constitutional or statutory provisions." There was and is no intimation in Green that the ruling there should be applied to state courts acting under their own constitutional and statutory provisions. The dissent there held essentially that: "Since the propriety of the original proceedings has been called in question by the defendant, a complete re-examination of the issues in dispute is appropriate and not unjust." This, in substance, is the rule of the Missouri Constitution (Art. I, § 19, V.A.M.S.), the Missouri statute (§ 556.250) and the Missouri cases.

However, defendant relies further upon the cases of Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, and Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, as extending the Green ruling to criminal trials in the state courts by virtue of the seemingly all-embracing arms of the Fourteenth Amendment. In Malloy, again a 5–4 decision, the question involved was self-incrimination; the petitioner, having been convicted on a misdemeanor gambling charge in Connecticut, refused to testify in a gambling probe, and was adjudged in contempt for failure to answer various questions. Upon certiorari, the Court said: "We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States." The prohibition of the Fifth Amendment against self-incrimination is that no person "shall be compelled in any criminal case to be a witness against himself * * *." The provision of the Missouri Constitution is: "That no person shall be compelled to testify against himself in a criminal cause * * *." Art. I, § 19. The two are for all purposes identical, with no such differences as exist in the matter of double jeopardy. What the Court really did in Malloy was to extend the federal procedure and case law to the states on *that* subject. The Court cited other cases in which certain specific provisions of the Constitution had been held applicable to the states under the Fourteenth Amendment, as: the right to counsel (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799); unlawful searches and seizures (Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726); freedom of speech (Gitlow v. People of State of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138), and coerced confessions as self-incrimination (Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423.) Mr. Justice Harlan, in dissent, said that the Court had thus disregarded "all relevant differences which may exist between state and federal criminal law and its enforcement," (378 U. S. l.c. 16, 84 S.Ct. l.c. 1498) and that the Court had merely substituted "its own super-

ficial assessment of the facts and state law for the careful and better informed conclusions of the state court." (378 U.S. l.c. 33, 84 S.Ct. l.c. 1507.) In any event, the Malloy decision did not touch upon the question of double jeopardy.

In the case of Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, a divided Court held that comment by the prosecutor and the Court upon the failure of a defendant to testify in a California criminal trial (with the death penalty imposed) violated defendant's privilege against self-incrimination under the Fifth Amendment as extended to the states under the Fourteenth. The California Constitution, Art. 1, § 13, permitted such comment but, in so doing, it took a place in the very great minority of states (6 out of 50). Again, we note that only the question of self-incrimination was involved, and that in a very unusual aspect.

■ In no case which has come to our attention has the Supreme Court held that the double jeopardy provision of the Fifth Amendment as applied by the federal courts, is applicable in state court prosecutions, although it has very recently in an almost complete reversal of prior cases and in a case by case procedure, applied the century old Fourteenth Amendment as a tool for the imposition of several other restrictions upon the states, as noted. Unless and until it does so, we shall continue to follow and apply our own double jeopardy provisions and the limitations thereon (Const., Art. I, § 19, and § 556.250, RSMo 1959) and the uniform constructions placed thereon by our courts since the adoption of our 1875 Constitution.

■ The decision in United States ex rel. Hetenyi v. Wilkins (C.A. 2), 348 F.2d 844, is not binding upon us. Such is the rationale of the three opinions in People v. Ressler, 17 N.Y.2d 174, 269 N.Y.S.2d 414, 216 N.E.2d 582, as we understand them, where the Court determined that it should reconsider its own rulings in the light of the cases which we have cited. It is possible that four of the seven judges felt that, in principle, the reasoning of Green had become applicable to the states; if so, we do not agree.

In Wilkins, supra, the Court held (in a 2–1 decision) that the double jeopardy provision of the Fifth Amendment was applicable to a New York State criminal case by virtue of the Fourteenth Amendment. There a defendant had been convicted of second degree murder when tried on an indictment for first degree murder; that judgment was reversed and he was later retried on the first degree charge, found guilty, and sentenced to death. Upon a reversal of that conviction, he was retried again, and eventually sentenced to a term of 40 years to life. The issue in the reported case arose in a habeas corpus proceeding. The dissenting judge stated that such a distinct departure from the prior law should be taken only by the United States Supreme Court, and not by the Court of Appeals. One result of the opinions in that case is obvious, namely, that the Supreme Court has not taken that step. And see the detailed discussion in Vol. 74 Yale Law Journal, 606 et seq.

In People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677, the California Supreme Court, in another divided opinion, indicated that it had previously agreed and did then agree with the *reasoning* in the Green case in interpreting its own law on double jeopardy, even so as to forbid the imposition of a greater punishment upon a retrial for the same offense. For whatever it may be worth, factually or legally, we note that in Green, Wilkins and Henderson, death penalties had been imposed at the second trials, whereas each defendant had only been subjected to imprisonment at his first trial. See also Kohlfuss v. Warden, 149 Conn. 692, 183 A.2d 626, and Hicks v. Commonwealth, 345 Mass. 89, 185 N.E.2d 739, as at least indicating the view that the reasoning of Green is not binding upon the state courts.

In the absence of binding federal authority the determination of the meaning and application of a state's provisions prohibiting double jeopardy is strictly a question of state *policy,* to be determined from the state's own constitutional (and statutory) provisions. 61 A.L.R.2d 1141, 1150, note. We conclude that we may and should follow the uniform construction of our own constitution, and we so hold.

The judgment is affirmed.

All of the Judges concur.