**542**

STATE of Missouri, Respondent,

v.

Octaviano J. PEREZ, Appellant.

No. KCD 27748.

Missouri Court of Appeals,
Kansas City District.

Feb. 9, 1976.

Motion for Rehearing and/or Transfer
Denied March 3, 1976.

Application to Transfer Denied
April 14, 1976.

Robert G. Duncan and William E. Shull,
Kansas City, for appellant; Duncan & Russell, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston
Dean, Asst. Atty. Gen., Jefferson City, for
respondent.

Before DIXON, P. J., PRITCHARD, C.
J., and WASSERSTROM, J.

PRITCHARD, Chief Judge.

Appellant was convicted by the verdict of
a jury in a second trial of the commission of
the offenses of the sale of the controlled
substances, secobarbital and pentobarbital,
as charged in separate counts, to James W.
Eapman and Robert T. Lawton, respectively. The jury was unable to agree upon the
punishment, and the court therefore sentenced appellant to seven years imprisonment in the Department of Corrections
upon each count of the indictment, to run
concurrently.

Two points are made on this appeal.
First, that because there was a variance in
the charges and proof in the first trial (the
·charge in Count I was a sale of secobarbital
to Robert T. Lawton, and in Count II, a sale
of pentobarbital to James W. Eapman,
when the proof showed the Count I sale
was made to Eapman and the Count II sale
was made to Lawton), a new trial was
granted upon the sustaining of appellant's
motion, therefore, the new trial, as claimed
by appellant, subjected him to double jeopardy. Secondly, appellant claims that his
two requested instructions on entrapment
in the sales of the controlled substances as
to each count should have been given because they were supported by the evidence.

Lawton was a Special Agent for the Federal Drug Enforcement Administration on
May 21, 1973. His duties were to make
undercover purchases of narcotics, make arrests and to do surveillance. In order to
make an undercover purchase of drugs or
narcotics he would be introduced to a dealer
by a "cooperating individual" who knew the
dealer. At about 5:30 p.m., on May 21,
1973, Lawton met appellant in Apartment
No. 11, 16 West 37th Street, Kansas City,
Missouri. Lawton and agent Eapman had

made prior arrangements with the cooperating individual, Bob Smith, to be at the apartment at that time. When Lawton knocked at the apartment door, Smith opened it and Lawton walked in. There were three people in the room, Smith, appellant and one Kevin Herron. Eapman was conducting a surveillance of the apartment building at the time. Lawton recognized appellant from having seen him about a year before when appellant was working as a cooperating individual for another agent, Mike Henkel, of the Drug Enforcement Administration, and Lawton "conducted surveillance on one of the deals that Octaviano Perez attempted to do." He may have seen appellant one time after that. Lawton took Smith back into the kitchen and told him he knew appellant, and to go outside and tell Agent Eapman that if he did not know appellant to come upstairs. Before Smith left, he told appellant and Herron that Lawton wanted 100 "yellows" or Nembutals, and on Lawton sitting down, Herron counted out 100 yellow capsules, put them in a Marlboro cigarette box and handed them to Lawton. The latter asked them how much money they wanted, and appellant told him $35, so Lawton handed that amount to appellant. In a minute or two Smith and Eapman came in and Lawton told Eapman he had made a "buy". They left and went to a filling station where Eapman called the Police Department. It was then decided that they would attempt to make a second purchase of drugs. Accordingly, about 6:30 p.m. of the same day, the three went back to the apartment and met appellant and Herron coming out. Eapman engaged appellant in a conversation and the five went back into the apartment where appellant took a large plastic bottle out of his pants pocket, handed it to Herron and told him to count out 100 "reds", or Seconals. Herron did so, handed them to Eapman who, in turn, handed him $35. Herron then handed the money to appellant.

Appellant, in addition to having been a cooperating individual for Mike Henkel, had an "SL" number with the federal agency, which number was given informers or confidential employees for their use so their names could be concealed. Persons who are cooperating individuals were not sent out on their own either to deal or purchase drugs for themselves—the agency policy prohibited that, and if it happened a case would be made on the individual. Appellant was arrested some seven months after the sale because the agents did not want to reveal the "cover" for the cooperating individual, Smith.

Agent Eapman was employed by the Narcotics Section of the Kansas City Police Department, but was on loan to the federal agency. He corroborated Lawton's testimony of the sale by appellant of pentobarbital. After they left the apartment, Eapman gave appellant and Herron a ride to the Commodore Hotel, during which appellant told Eapman he could get any type of pills he wanted, barbituates and amphetamines, and that he sometimes had heroin. Eapman was unaware, on May 21, 1973, that appellant had worked as an informer for the Kansas City Police Department, or other agencies, but he did learn that later.

Appellant testified that he talked to Mike Henkel of the Drug Enforcement Agency, and in working for him he tried twice to set up deals, sales, and was successful one time. In September, 1972, appellant started working as an informer for Frank Etzenhouser of the Tactical Unit, Kansas City, Missouri Police Department, having been approached by Etzenhouser after being placed on probation from a plea of guilty to uttering a bad check. As an informer, appellant was to get information and was instructed, according to his testimony: "A. I was to get information on any burglaries or robberies that might be taking place, so the police could be there and apprehend them at the time of the crime, and any other information, I could get. Q. In other words, you were to tell them in advance of crimes that were going to be committed? A. Yes. Q. How would you find out that information?

A. By running around and mixing with different people, associating with them. Q. All right. And did you pretend to be something? A. I pretended to be a drug dealer, myself. Q. A drug dealer? A. Yes. Q. How long did that continue, you acting as a—or pretending to be a drug agent? A. I quit in about, I think it was July of '73." Appellant participated in two particular burglaries, advising the police department in advance thereof. On July 10, 1973, appellant was charged with burglary, and on June 26, 1973 and May 29, 1973, he was charged with a narcotics violation. · Etzenhouser interceded for appellant and these charges were dismissed, as well as two other burglary charges. As to the instant charges, appellant testified that he met Bob Smith, whom he knew, in Volker Park and Smith asked him if he had anything for sale. "He needed some downers." Smith told appellant that the people he needed pills for were from Chicago. "They was one of the criminals up there." Appellant got pills from an associate of his, and told Etzenhouser about having some people from Chicago, but did not tell him about securing the pills from his associate. It was, according to appellant, his intent to set up the persons from Chicago so they could be arrested, but he had no further contact with them. One of the conditions of appellant's probation was that he was not to associate with drugs, but he did continue to participate because, according to him, he was told by Etzenhouser that he would be under the protection of the Police Department. As a result of the present charges, appellant's parole was revoked and he began serving five years imprisonment for the check uttering charge.

In rebuttal, Frank D. Etzenhouser testified that in May, 1973, he was attached to the Tactical Unit, Special Operations Division of the Kansas City Police Department. The unit was then "working the most commonly known criminals, burglary and robbery subjects in Kansas City." Etzenhouser had known appellant since about 1966 or 1967, but the first occasion he had occasion to use appellant as an informant was in February, 1973, when he was informed by Etzenhouser that a burglary was about to occur. In January of that year appellant was asked by Etzenhouser if he would like to be an informant and make some money, to which he agreed. Etzenhouser told appellant that if he heard any information on burglars, robbers or narcotics to pass the information to him. Etzenhouser told appellant that just because he was informing did not give him the right to go commit crimes, and that if he was involved in a crime himself, Etzenhouser could not help him. "I instructed him not to go on a burglary, you know. If he was to inform—if someone came to him, and told him a burglary was going to occur, for him not to go on the burglary, himself to be involved." However, in May, 1973, appellant was involved in a burglary, going inside the business, and Etzenhouser released him at the scene of the burglary. Later that night, appellant came by the police unit, received his informer's fee and Etzenhouser "instructed him that he was no longer an informant of mine. I was to sever all relations with him for going on the burglary." After that occurrence, appellant did not act as an informer for Etzenhouser, who denied that appellant had called him about the Chicago criminals.

■ Appellant's first point is overruled because there was no final judgment in the case and because of the rule in this state that jeopardy does not attach where a new trial is had upon the sustaining of a motion therefor. *State v. Patton*, 308 S.W.2d 641, 644[9] (Mo. banc 1958), and cases and authority cited. See particularly the therein cited case of *State v. Austin*, 318 Mo. 859, 300 S.W. 1083, 1084[1–3] (Mo.1927), where the claimed error was identical to that here—a fatal variance between the charge and the proof, and the court said, loc. cit. 1085, "Moreover, notwithstanding the trial court sustained the motion for new trial on the ground that it should have directed a verdict of acquittal, the defendant, in moving and requesting a new trial, waived the

right to plead former jeopardy. (Citing cases and authority.)" The rule still obtains. *Kansas City v. Bott,* 509 S.W.2d 42, 46[2, 3] (Mo. banc 1974); *State v. Crane,* 420 S.W.2d 309, 311 (Mo.1967). Appellant's cited cases of *Ashe v. Swenson,* 397 U.S. 436 (1970); and *Harris v. Washington,* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971), do not aid him for in each there was a judgment of acquittal on determinative issues sought to be presented on trial as to other victims.

 "Entrapment has been defined as the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him. It has also been defined as the conception and planning of an offense by an officer and the procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." 21 Am. Jur.2d Criminal Law, § 143, p. 211. Here, there is no evidence, even from appellant's testimony, that officer Etzenhouser lured or induced appellant to commit the offense of selling prohibited substances in order to prosecute him therefor. There is no evidence that at the time of the sales officers Lawton and Eapman had any knowledge that appellant either then, or had in the past, acted as an informer for Etzenhouser. All that appears is that appellant pretended to be a seller of drugs. There is no evidence that he was authorized by anyone to sell them in connection with his employment as an informer. Evidence is here lacking to show the classic pattern of entrapment—the implanting in the mind of appellant a criminal intent to do a prohibited act for the purpose of prosecuting him. No instructions with reference to the two charges was therefore required on the subject of entrapment. All that appellant's testimony injected into the case was his own lack of criminal intent which was a question for the jury to determine under the state's verdict directing instructions, *and* appellant's two given instructions submitting that if the jury found beyond a

reasonable doubt that he did not intend to sell the controlled substances, it must find him not guilty under each count. In the posture presented by the evidence, his lack of criminal intent was all that was required to be submitted as converses to the state's verdict directing instructions. Obviously, the jury found against appellant on those issues. Compare the annotation, "Criminal Responsibility of One Who Acts as a Decoy to Detect Commission of Crime," 120 ALR 1506.

The judgment is affirmed.

All concur.